IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CHRISTIAN MCKAY HEIDICKER,<br><br>Plaintiff,<br><br>v.<br><br>WASABI ENTERTAINMENT INC. and PAUL PATTISON,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER DENYING MOTION FOR DEFAULT JUDGMENT<br><br>Case No. 2:24-cv-00713-JNP-CMR<br><br>Chief Judge Jill N. Parrish |

Before the court is plaintiff Christian McKay Heidicker's motion for a default judgment against defendants Wasabi Entertainment Inc. and Paul Pattison (collectively, the defendants) based on two of the eight claims asserted in the complaint. ECF No. 17. The court finds that allegations of the complaint fail to state a claim for relief under either of these two claims. Accordingly, the motion for default judgment is DENIED.

**BACKGROUND**

Heidicker is a successful author of children's books and is domiciled in Utah. Wasabi is a Canadian corporation. A company associated with Wasabi hired Heidicker to write a series of books known as the Weirdwood Manor novels. Wasabi owns the rights to this book series and developed a boardgame based on the Weirdwood Manor novels. It planned to sell the game through the Kickstarter website. In October 2021, Wasabi and Heidicker entered into a rights agreement that allowed Wasabi to use Heidicker's name, likeness, and biography to promote the Weirdwood Manor boardgame. In exchange, Wasabi agreed to pay Heidicker 1.5% of the net receipts for the

game. But regardless of the total amount of the net receipts, Heidicker would receive no less than $2,000 and no more than $10,000.

The Weirdwood Manor boardgame was a success. Heidicker estimates that Wasabi received between $490,000 and $700,000 in sales for the game. But Wasabi did not pay Heidicker any money under the terms of the name and likeness agreement, and it ignored Heidicker's attempts to communicate with it regarding payment.

Heidicker sued Wasabi and Pattison, the individual who signed the agreement on behalf of Wasabi. In addition to a number of other causes of action, Heidicker asserted claims for common-law fraud and for a violation of the Lanham Act. After the defendants failed to answer the complaint, Heidicker moved for a default judgment based on the fraud and Lanham Act claims. He asks the court to award him $46,651 in damages, costs, attorney fees, prejudgment interest, and punitive damages for the fraud claim and $75,000 for the disgorgement of profits for the Lanham Act claim.

**LEGAL STANDARD**

"[E]ntry of a default judgment is committed to the sound discretion of the district court . . . ." *Tripodi v. Welch*, 810 F.3d 761, 764 (10th Cir. 2016); *accord* 10A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2685 (4th ed. 2026) ("[T]he district judge is required to exercise sound judicial discretion in determining whether [a default] judgment should be entered."). In evaluating a motion for default judgment, the court accepts all of the well-pled factual allegations of the complaint as true. *Equal Emp. Opportunity Comm'n v. Roark-Whitten Hosp. 2, LP*, 28 F.4th 136, 157 (10th Cir. 2022). But "a party in default does not admit mere conclusions of law." *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) (citation omitted). Thus, courts may consider whether the allegations of the complaint are sufficient to support a

judgment in favor of the plaintiff. *Id.* If a claim is barred by Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court does not abuse its discretion by declining to enter a default judgment based on that claim. *Id.*

**ANALYSIS**

**I. FRAUD**

Heidicker asserts a common-law fraud claim against the defendants. The basis for his fraud claim is that the defendants made a promise in the rights agreement to pay Heidicker a sum between $2,000 and $10,000 based on the sales figures for the Weirdwood Manor boardgame but had no intent to fulfill this term of the contract at the time of its formation. In other words, Heidicker asserts that the defendants committed fraud because they entered into the rights agreement with their fingers crossed behind their backs.

Heidicker cannot prevail on his fraud claim because it is barred by the economic loss rule. "The economic loss rule is a judicially created doctrine that marks the fundamental boundary between contract law, which protects expectancy interests created through agreement between the parties, and tort law, which protects individuals and their property from physical harm by imposing a duty of reasonable care." *Reighard v. Yates*, 285 P.3d 1168, 1176 (Utah 2012) (citation omitted). "Thus, 'when a conflict arises between parties to a contract regarding the subject matter of that contract, "the contractual relationship controls, and parties are not permitted to assert actions in tort in an attempt to circumvent the bargain they agreed upon."'" *Id.* (citation omitted). Applying this doctrine, the Utah Court of Appeals specifically held that the economic loss rule barred fraud-based claims that were founded on allegations that a party to a contract made false assurances that the party intended to honor the terms of a contract. *KTM Health Care Inc. v. SG Nursing Home LLC*, 436 P.3d 151, 172 (Utah Ct. App. 2018).

The doctrine applies with even greater force here because Heidicker alleges that the terms of the rights agreement constituted false representations at the time that the contract was signed. Because the economic loss rule bars Heidicker's attempt to convert a breach of contract claim to a fraud claim, the court denies his motion for default judgment to the extent that he relies on his common-law fraud claim.

## II. LANHAM ACT CLAIM

In his complaint, Heidicker alleges that the defendants violated one of the provisions of the Lanham Act. Specifically, he asserts that the defendants ran afoul of 15 U.S.C. § 1125(a)(1)(B), which prohibits "in commercial advertising or promotion, misrepresent[ing] the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." Heidicker claims that the defendants violated this provision because they "used Plaintiff's image, likeness and/or identity . . . without authority in order to create the perception that the Plaintiff worked at or was otherwise affiliated with Defendants and the board game and/or authorized Defendants' usage of his image and likeness in order to advertise, promote and market Defendants' board game." ECF No. 1 at ¶ 41.

The court concludes that this Lanham Act claim does not support entry of a default judgment for two reasons. First, Heidicker bases his claim on a provision of the Lanham Act that prohibits misrepresentations regarding the nature, characteristics, qualities, or geographic origin of a product. But he does not allege that the defendants made a misrepresentation about the qualities of the Weirdwood Manor boardgame. Heidicker alleges only that the defendants misrepresented that he had authorized the use of his name and likeness in connection with the marketing of the game. Thus, Heidicker has failed to state a claim for relief under the provision of the Lanham act that he chose to assert in his complaint.

Second, Heidicker's claim that the defendants used his name and likeness without authorization is not supported by the facts asserted in the complaint. Heidicker acknowledges that he entered into a rights agreement, which unambiguously authorized Wasabi to use his name and likeness to market the boardgame. Although Heidicker did not receive the promised payment, the defendants had permission to use his name and likeness. Thus, his remedy lies in enforcing the payment provision of the contract rather than a Lanham Act claim based on the alleged unauthorized use of his name and likeness.

Accordingly, the court denies Heidicker's motion for a default judgment to the extent that he relies on his Lanham Act claim.

## CONCLUSION

For the above-stated reasons, the court denies Heidicker's motion for a default judgment based on the fraud and Lanham Act claims. Heidicker, however, asserted other claims in his complaint. The court ORDERS Heidicker to file a status report by October 8, 2026, indicating whether he intends to seek a default judgment on any of the other claims. If Heidicker fails to respond, the court may consider whether dismissal of this action is appropriate for failure to prosecute.

DATED September 17, 2026.

BY THE COURT



Jill N. Parrish
Chief District Court Judge